IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 21, 2010

## JAMES PAUL HURT v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2008-CR-159      Robert Crigler, Judge**

---

**No. M2009-01209-CCA-R3-PC - Filed February 8, 2011**

---

Petitioner, James Paul Hurt, was convicted by a Marshall County jury of selling 0.5 grams or more of cocaine and delivery of 0.5 grams or more of cocaine. The trial court merged the convictions, and on direct appeal, this court affirmed the judgment of the trial court. *State v. James Paul Hurt*, No. M2006-02381-CCA-R3-CD, 2007 WL 4552987 (Tenn. Crim. App. at Nashville, Dec. 27, 2007), no perm. to app. filed. Subsequently, Petitioner timely filed a petition for post-conviction relief. Following an evidentiary hearing, the trial court denied relief and dismissed the petition. Petitioner appeals, arguing that his trial counsel provided ineffective assistance of counsel. Following review of the briefs and the record, we affirm the judgment of the post-conviction trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Melissa L. Thomas, Fayetteville, Tennessee, for the appellant, James Paul Hurt.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

## I. Background

The facts which led to Petitioner's conviction were set forth as follows, in this court's opinion on direct appeal:

This case involved a planned undercover operation by the 17th Judicial District Drug Task Force (Task Force). This operation originally targeted Sheila Howard but, instead, resulted in snaring [Petitioner]. Joey Callahan volunteered to act as a confidential informant and attempt to buy drugs within the Task Force's jurisdiction. Callahan had entered an open sentence guilty plea and hoped to benefit himself by his cooperation.

Sheila Howard, at the time of trial, was serving a sentence in the Tennessee Department of Correction on unrelated charges. She testified that on January 20, 2004, she lived in Lewisburg. She was called by Callahan, her cousin, who asked for an eight ball of crack cocaine. In turn, Howard called [Petitioner], who told Howard that he could supply the cocaine. She informed Callahan, who came to her house. [Petitioner] came later and placed the packaged cocaine on a table. Callahan took it and replaced it with $175, the previously agreed price. Howard took the money into the kitchen, and [Petitioner] followed her. [Petitioner] offered to pay her a share, but she declined. Two audio tapes were played which contained the voices of Callahan, who was wired with a transmitter, and Howard.

Callahan was monitored both by audio and constant visual surveillance by members of the Task Force. Shane George, a member of the Task Force, testified that a camera had been mounted in the Task Force vehicle provided to Callahan on that day. It showed that Callahan arrived at Howard's at 3:56 p.m. and re-entered the vehicle to leave at 4:09 p.m. In order to preserve Callahan's role as confidential informant, no arrests were made on that date.

Several Task Force officers were involved in maintaining surveillance. Officer James Whitsett knew [Petitioner] and recognized him as he entered and left the Howard residence. Another officer, Timothy Miller, videotaped [Petitioner] leaving Howard's residence.

Callahan's testimony was consistent with the description provided by Howard. Callahan freely admitted he hoped his efforts as an informant would result in a more lenient sentence for himself.

The drugs obtained from [Petitioner] were tested at the Tennessee Bureau of Investigation laboratory and confirmed as being of a cocaine base, weighing 2.4 grams.

[Petitioner] chose not to testify at trial and expressed his choice during a *Momon* hearing.

*State v. James Paul Hurt*, No. M2006-02381-CCA-R3-CD, 2007 WL 4552987 at *1-2 (Tenn. Crim. App. at Nashville, Dec. 27, 2007)

## II. Post-Conviction Hearing

At the post-conviction evidentiary hearing, only Petitioner and his trial counsel testified. Petitioner testified that he gave trial counsel two letters written by his co-defendant Sheila Howard, which were delivered to another inmate who gave them to Petitioner. Petitioner believed that the letters provided useful information to show that he was not guilty of the criminal activity that he was charged with committing. Specifically, Petitioner interpreted the letters to say that Sheila Howard "took a [criminal] charge" for her ex-boyfriend Chad Brown. Ms. Howard's second letter stated in part "[t]he dope wasn't even mine it was Chad's. There's twice somebody else was selling to Joey and I was just there and still [got] charged." The proof at Petitioner's trial was that Joey Callahan was the State's confidential informant who purchased cocaine. Sheila Howard testified for the State at Petitioner's trial and accepted a negotiated plea agreement with the State on several criminal charges.

James Morris, who was incarcerated with Petitioner, received the letters from Ms. Howard. Petitioner gave trial counsel the letters in March 2006, approximately five months prior to his jury trial. He was not aware if trial counsel had interviewed Mr. Morris or Ms. Howard about the letters. He met with trial counsel for about an hour prior to the start of his trial, and in this meeting asked her about the letters. Petitioner stated that trial counsel said she would not be using the letters as they did not help his case because "it was not clear." The letters were not used during the trial and Petitioner got them back from trial counsel. Petitioner testified that he had two rather brief telephone conferences with trial counsel prior to trial. Trial counsel told him she had spoken to Ms. Howard and was attempting to interview a witness named Laticia Greer.

In his direct examination, Petitioner set forth his complaints of trial counsel's deficient representation (in addition to not using Ms. Howard's letters) as follows:

Q.    Do you think [trial counsel] did a good job representing you?

A.    No, ma'am.

Q.    And why not?

-3-

A.  I mean, because of the improper investigation. She didn't spend no time preparing herself for no type of defense for me. You know what I'm saying? I even - - I never even - - We never even questioned, you know what I'm saying, spoke as far as me even getting up on the stand and testifying, because she never even prepared me for nothing like that, for my own defense.

Q.  Did she go over with you your right to testify?

A.  She went over with me my right to testify in the trial.

Q.  Did you want to testify?

A.  No, I didn't feel, you know what I'm saying, comfortable, if it was in my best interest to. You know what I'm saying, you testify with the attorney that I had. Because I didn't know what she would come at, what she would say to me or whatsoever, she would try to protect me or whatsoever. Try to hurt me or what. I ain't know. I couldn't trust her.

Q.  You don't believe [trial counsel] was effective in impeaching or proving - - let me tell you, impeachment is trying to show that somebody is telling a lie.

A.  No, ma'am, I really don't.

Q.  And you think that your case might have had a different outcome had that been the case?

A.  Most definitely.

On cross-examination, Petitioner testified that he felt Laticia Greer and James Michael Morris should have been called to testify on his behalf at the trial. In addition, Petitioner testified in general about ways trial counsel was deficient in her representation. He stated, "I just really wanted my case investigated. That is all I wanted. I want the full evidence of everything to come out in my case." On redirect examination, Petitioner reiterated that the reason he did not testify in his own behalf at trial was because he "didn't feel comfortable with my representation of my attorney." Petitioner elaborated that trial counsel presented an unsuccessful motion to withdraw prior to trial, never discussed jury selection with Petitioner,

never met face-to-face with him to prepare for trial, and never explained the use of juror challenges with Petitioner.

Trial counsel testified that she never told Petitioner that Ms. Howard's letters were not helpful to his case. However, she did not use the letters because they discussed some of Ms. Howard's criminal charges in cases not involving Petitioner. Trial counsel acknowledged that she never went to the Tennessee Department of Correction institution where Petitioner was incarcerated after a parole violation pending the trial, but she did have conversations with him by phone several times.

Trial counsel testified that she spoke with Ms. Howard several times, but that she could not recall talking to her about the letters Ms. Howard had written. Trial counsel stated that she also spoke with Laticia Greer prior to trial, but did not recall knowing the name of the inmate to whom Ms. Howard's letters were written. She did not call Ms. Greer as a witness because what Ms. Greer would have said at trial would not have helped Petitioner's case.

The Circuit Court Clerk of Marshall County testified that Ms. Howard had four different drug related charges pending against her at the time Petitioner's charges were pending.

At the conclusion of the hearing, the trial court announced its findings and dismissed the petition. The trial court accredited the testimony of trial counsel. The court found that Ms. Howard's letters were not shown to have anything to do with Petitioner's case, and that trial counsel did ably cross-examine Ms. Howard and that trial counsel "did the best she could with the case that the State had against [Petitioner]."

## III. Analysis

In his brief on appeal, Petitioner argues that trial counsel rendered ineffective assistance of counsel by: failing to conduct a thorough investigation of the facts; never presenting a defense at trial; failing to use Ms. Howard's letters at trial; failing to withdraw as counsel at trial in order to impeach Ms. Howard with a prior inconsistent statement given to trial counsel by Ms. Howard; and failing "to explore any of the information he tried to provide to assist her."

Regarding the failures to properly impeach Ms. Howard with a prior inconsistent statement, trial counsel acknowledged that Ms. Howard initially stated pre-trial that Petitioner was not involved in the drug transaction, but Ms. Howard testified at trial that Petitioner did supply the cocaine. On cross-examination at the trial, trial counsel asked Ms.

Howard, "[d]id you tell me when we were talking the first time that [Petitioner] did not bring these drugs in?", to which Ms. Howard replied "I don't remember telling you that."

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668 , 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[I] fit is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Applying the above principles to the facts of this case, we conclude that Petitioner failed to prove by clear and convincing evidence that his trial counsel provided ineffective assistance of counsel. Even if Petitioner did prove deficient representation, he utterly failed to put on any proof of prejudice. Simply introducing the letters purportedly written by Ms. Howard does not establish the prejudice necessary to grant post-conviction relief.

Regarding allegations of failure to interview or call witnesses, Petitioner failed to produce testimony of Ms. Howard, Mr. Morris, Ms. Greer, or any other person to establish proof of what evidence trial counsel failed to utilize.

A post-conviction petitioner generally fails to establish his claim that counsel did not properly investigate or call a witness if he does not present the witness to the post-conviction court; a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

Petitioner is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE